```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION
```

**Betty Cooke,**                           )
                                           )
        Plaintiff,       )
                                           )
   v.                                  )   No.   04 C 8289
                                           )
**The CNA Group Long Term**                )
**Disability Insurance Plan,**             )
**Designated for Employees of**            )
**Burnham Management Company,**            )
**Burnham Properties Group, Inc.,**        )
**Riverbend Industries, L.L.C.;**          )
**CNA Group Life Assurance Company**       )
**and Faye Bernabe in their**              )
**capacity as Administrators of**          )
**The Plan; The Hartford Financial**       )
**Services Group, Inc. and Joye**          )
**Kelly, in their capacity as**            )
**Administrators of The Plan; and**        )
**Burnham Management Company and**         )
**Riverbend Industries, L.L.C.,**          )
                                           )
        Defendants.     )

## MEMORANDUM OPINION AND ORDER

Mrs. Betty Cooke ("Mrs. Cooke") worked as a site manager for Burnham Management Company ("Burnham") since 1995. Through Burnham, Mrs. Cooke participated in the Burnham Management Company Long Term Disability Plan ("the plan") which was established through its purchase of group insurance from the CNA Life Insurance Company (now known as the Hartford Life Group Insurance Company).

On July 21, 2003, Mrs. Cooke ceased work due to symptoms of proximal muscle weakness, diabetes type II, lethargy, fibromyalgia, myopathy, hypertension, reflux, insomnia, degenerative joint disease, and hyperlipidemia. Upon her work stoppage, Mrs. Cooke applied for and received short-term disability benefits between July 17, 2003 and January 18, 2004. Mrs. Cooke subsequently applied for and received Social Security Disability benefits on June 25, 2004.

After her short-term disability terminated, Mrs. Cooke applied for long-term disability. Her application was reviewed by the Hartford Life Insurance Company ("Hartford"). On April 26, 2004, the claims administrator in charge of Mrs. Cooke's claim denied Mrs. Cooke benefits in a three page letter ("first denial letter"). The plan did not hire a physician to either examine Mrs. Cooke or review the record in its initial denial of her claim.

On September 17, 2004, Mrs. Cooke's attorneys appealed the denial of benefits. The request was reviewed by the Appeals Unit of Hartford. In reviewing the claim, the Appeals Unit hired a medical consultant, Dr. Mark Friedman, to review the claim file. Without examining Mrs. Cooke, Dr. Friedman concluded that the medical file did not support her claim for disability. On November 8, 2004, the claims administrator sent Mrs. Cooke's

attorneys a letter ("second denial letter") affirming the earlier denial of benefits.

Mrs. Cooke's attorneys had forwarded additional medical records and the record of Plaintiff's successful Social Security Disability claim to Hartford on November 3, 2004. These records, however, had not been considered in the plan's denial of appeal. On December 8, 2004, these additional records were forwarded to Dr. Friedman. Dr. Friedman reviewed the additional records and concluded that there still was no objective evidence to support Mrs. Cooke's claims. On December 15, 2004, another letter ("third denial letter") was sent to Mrs. Cooke's lawyers explaining that the additional records had been reviewed and the plan affirmed its decision to deny benefits. The letter stated that all administrative remedies had been exhausted and informed Mrs. Cooke of her right to appeal under the Employee Retirement Income Security Act § 502(a). Mrs. Cooke filed her complaint with this court. The plan now moves for summary judgment.

I.

The plan language reads "[t]he plan administrator and the other plan fiduciaries have discretionary authority to determine your eligibility for and entitlement to benefits under the policy." A.R. H00029. Both parties agree that this language gives the administrator discretion over eligibility

3

determinations that must be reviewed by this court according to the "arbitrary and capricious" standard. *Manny v. Central States, Southeast and Southwest Areas Pension and Health and Welfare Funds*, 388 F.3d 241, 242 (7th Cir. 2004).

Under the arbitrary and capricious standard, the administrator's decision will only be overturned when it is "unreasonable, and not merely incorrect." *Jacobs v. Xerox Corp. Long Term Disability Plan*, 356 F. Supp. 2d 877, 885 (N.D. Ill. 2005). In reviewing that decision, I must consider "whether the plan administrator (1) considered the factors relevant to the decision, and (2) articulated an explanation that makes a 'rational connection' between the issue, the evidence, the text, and the decision made." *Id.* at 888.

II.

Before turning to the merits of this case, I address two related motions submitted by the plan. First the plan moves to strike the affidavit of Dr. Pocholo Florentino attached to Mrs. Cooke's Statement of Additional Facts That Require Denial of Summary Judgment. This affidavit was not part of the administrative record. Under the arbitrary and capricious standard, review is limited to the administrative record. *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456 (7th 2001). Therefore, I grant the plan's motion and strike the affidavit.

4

The plan also moves to strike certain paragraphs of Mrs. Cooke's Response to its Statement of Material Facts. The plan argues that certain paragraphs violate Local Rule 56.1(b)(3)(A) for failure to properly cite to the record and by the addition of argument to the responses. This court has the discretion to strike those answers which are not in compliance with Local Rules. *Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002). Where Mrs. Cooke has failed to comply with the Local Rules in her answers, I have not considered those responses. I have, however, reviewed the entire record.

### III.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Where the facts of this case are in dispute, I have construed the facts in the light most favorable to Mrs. Cooke.

IV

Turning to the substance of the summary judgment motion, I find that the denial of benefits to Mrs. Cooke was arbitrary and capricious for the following reasons.

First, the plan's review of Mrs. Cooke's application for benefits did not give proper consideration to Mrs. Cooke's claims of disability due to fibromyalgia.[1] Fibromyalgia may be diagnosed with an objective clinical examination locating "multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia)." *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003). Other than the diagnosis, however, there are "no laboratory tests for the presence or severity of fibromyalgia" and "its symptoms are entirely subjective." *Id.* at 916. In *Hawkins*, a plan denied benefits to an individual claiming disability due to fibromyalgia because the disability was not substantiated by objective medical evidence. The court reversed the plan's denial and held that even if the severity of

---

[1] In other parts of her brief and the record, Mrs. Cooke has argued that other conditions contributed to her disability. I do not evaluate the plan's decision in regards to these other conditions in this opinion because having found that it the plan did not have adequate grounds to deny her claim for fibromyalgia.

a condition can only be measured subjectively, an individual may still qualify for disability. Therefore, a denial is arbitrary and capricious if it rejects a subjective claim of disability for the sole reason that it is not supported by objective medical findings.

This is not to say that the plan must accept a claimant's subjective claim of disability blindly. Rather, the plan must make an inquiry that would reasonably allow it to make an assessment of the claimant's credibility. *See Id.; Shyman v. Unum Life Ins. Co. of America*, 2004 U.S. Dist. LEXIS 4964 *58 (N.D. Ill. 2004) ("In situations such as the present one where subjective reporting of symptoms is a principal element of diagnosis and treatment, defendant must have sufficient grounds for finding the claimant's subjective reports and the treating physician's evaluation non-credible."). Therefore, if the plan had reasonable grounds to question Mrs. Cooke's or her physician's credibility, it could properly discount her subjective reports.

The record shows that Mrs. Cooke submitted a claim of disability due to fibromyalgia, records that indicate a clinical diagnosis of fibromyalgia, and the opinions of numerous doctors and third parties that corroborated the severity of her disability. In her application, Mrs. Cooke gave subjective

reports of her pain and limited mobility. In part, this description read: "[v]ery weak. My joints + muscles hurt 24/7 & cause me to fall (loss of balance)." A.R. H00378. Mrs. Cooke's supervisor also expressed the opinion that she was unable to work. Her supervisor stated "I can see her and her full-time job is going to Dr.'s appointments and she is definitely disabled." A.R. H00160.

Mrs. Cooke's self-reported symptoms were corroborated in the record by the opinions and records of a number of physicians who stated a diagnosis of fibromyalgia and their belief that Mrs. Cooke was disabled. Mrs. Cooke's rheumatologist, Dr. Lee Lichtenberg, wrote in a letter to her primary physician: "[p]hysical examination showed classic and nonclassic trigger points. . . . Mrs. Cooke has fibromyalgia." AR H00435. Dr. Lichtenberg also stated in another letter that "Betty Cooke is under my care for fibromyalgia. Mrs. Cooke has been incapacitated by her symptoms. . . . She is incapable of independent activities of daily living." A.R. H00235.

Mrs. Cooke also submitted the opinion of her primary physician, Dr. Pocholo Florentino. Dr. Florentino had diagnosed Mrs. Cooke with fibromyalgia. At one point he observed "[w]e agreed she needs to stay off work because of her instability; may use walker because of balance and weakness." A.R. H00416. At

8

another point he stated "[o]verall, her ability to do her daily activities are [sic] severely restricted at this time and it is doubtful that she would be able to maintain a work schedule through a 6-8 hour day. . . . I do not feel that she is exaggerating her symptoms." A.R. H00115. In a letter that had been submitted during Mrs. Cooke's Social Security Disability review which was subsequently forwarded to the plan, Dr. Florentino stated "her conditions insidiously deteriorated sometime around [July 21, 2003] to the extent that she can not function on her own, and chances are, she will be permanently incapacitated . . . ." AR H 00236.

Additionally, Mrs. Cooke submitted the findings of one of the physicians from her Social Security Disability review, Dr. Roopa Kari. After Mrs. Cooke's Social Security Internal Medicine Consultative Examination, Dr. Kari stated "[t]he claimant could not walk 50 feet without support. She limps on both legs and needs a cane to walk." A.R. H00119. Dr. Kari also noted symptoms consistent with fibromyalgia: "she has tenderness all over her body wherever she was touched." AR H00119.

Finally, Mrs. Cooke submitted the decision of the Social Security Disability Board finding that "[Mrs. Cooke] became

9

disabled under our rules on July 21, 2003."[2] The Social Security determination is not binding on this matter, but the decision is still probative and further corroborates Mrs. Cooke's claims.[3] A.R. H00230. See *Herzberger v. Standard Ins. Co.* 205 F.3d 327, 333 (7th Cir. 2000); *Minix v. Liberty Life Assur. Co.*, 2005 U.S. Dist. LEXIS 15309 at *16 (N.D. Ill. July 22, 2005).

Despite all of this evidence, the plan determined that Mrs. Cooke was not disabled due to fibromyalgia. In denying Mrs. Cooke's claims on appeal, the plan primarily relied on the report of its consultant, Dr. Friedman.[4] Based on his review of the records, Dr. Friedman concluded that there was an "absence of objective evidence of an organic or physical basis for functional limitations from a sedentary position." A.R. H00074. The plan is correct in stating that it is entitled to rely on a hired consultant's conclusions even if they contradict the findings of a claimant's own doctors. *Black & Decker Disability Plan v. Nord*,

---

[2] The medical evidence submitted to the Social Security Board on Mrs. Cooke's behalf indicates that fibromyalgia was the disabling condition.

[3] Although the Social Security determination took place months before the plan's final decision, nothing in the record indicates that Mrs. Cooke's condition changed during this time period.

[4] Before issuing the first denial letter, the plan did not submit Mrs. Cooke's file for review by a physician. Instead, the plan relied on the analysis of the clinical case manager in making its determination that Mrs. Cooke was not disabled. Dr. Friedman only reviewed the case on appeal.

10

538 U.S. 822 (2003). The conclusion drawn from the consultant's findings, however, must still be reasonable given the facts and circumstances of the particular case.

The plan has not demonstrated that Dr. Friedman had any expertise in the area of fibromyalgia. Dr. Friedman did not examine Mrs. Cooke and his review was limited to the medical records submitted. In reaching his conclusion, Dr. Friedman also ignored the opinions of the other doctors (one of whom was a rheumatologist) who had actually examined Mrs. Cooke and concluded that her fibromyalgia was disabling. Based primarily on Dr. Friedman's review the plan wrote to Mrs. Cooke: "we have concluded that there is no evidence that establishes a medical basis from a physical or mental/nervous standpoint that would support [Mrs. Cooke's] contention that she was and continues to be precluded from performing her occupational work activity . . ." and "[t]horough physical evaluations and testing have not provided any findings on physical/clinical examination that correlate with your client's self-reported complaints."[5] The use of Dr. Friedman's conclusions to reject Mrs. Cooke's subjective

---

[5] Although these statements came from the November 8, 2004 letter which was written before some of Mrs. Cooke's additional submissions were reviewed, the December 15, 2004 letter incorporates the earlier letter in stating "that our prior decision of November 8, 2004, remains unchanged."

11

claims of disability for lack of supporting objective findings provided no meaningful evaluation of the severity of her condition due to the fact that the severity of fibromyalgia could not be substantiated by the objective findings contained in those records because it is only subjectively measurable.

Furthermore, the plan emphasized the fact that the plan language makes "objective medical findings . . . includ[ing] tests, procedures, or clinical examination [supporting] [y]our disabling condition" a requirement and that Mrs. Cooke's submissions had failed to meet this requirement. The record shows, however, that Mrs. Cooke had submitted records showing a clinical diagnosis of fibromyalgia. The plan's assertion that it reviewed and gave consideration to all records submitted in determining Mrs. Cooke's claim is thus further undermined by the fact it repeatedly states that she failed to submit any medical findings that correlate with her self-reported symptoms.[6]

Dr. Friedman's analysis and the plan's denial of Mrs. Cooke's appeal also relied on a conversation that took place on November 2, 2004 involving Dr. Florentino and Dr. Friedman. The

---

[6] The plan has not argued that a condition such as fibromyalgia (or any condition that may be clinically diagnosed but the severity of which is only subjectively measurable) is itself not covered under the terms of the plan, but rather that Mrs. Cooke failed to provide any evidence supporting her claim.

12

record contains Dr. Friedman's summary of the conversation. In this conversation, Dr. Friedman states that Dr. Florentino told him: that Mrs. Cooke's claims of disability are subjective; that objective medical testing cannot verify her claims; that she uses a walker and cannot drive (though for unclear reasons); and that "she could probably carry out the functional activities of a sedentary position." The plan's use of this conversation is another example of its failure to actually consider the entire record. Dr. Friedman's partial and unverified record of his conversation with Dr. Florentino must be viewed in conjunction with Dr. Florentino's other submissions in the record in which he stated his belief that Mrs. Cooke is in fact disabled.[7] Yet, the plan chose to ignore Dr. Florentino's earlier documented opinions and rely on Dr. Friedman's discussion as conclusive of Dr. Florentino's position even though that discussion was only reported in part, appears to be premised upon evaluating Mrs. Cooke according to an erroneous standard of activity, and was

---

[7] In addition to the statements noted earlier, for example, the record indicates Dr. Florentino reported that all of the doctors are in agreement that Mrs. Cooke has fibromyalgia, that he has observed her coming in to his office from the parking lot and that "she struggles, uses help," that she has "grip strength loss," is "not able to hold a cup of coffee," is accompanied by "an aide," and "would not be able to stand the demands of a job." A.R. H00014.

never made available to Mrs. Cooke or her attorneys so that any inconsistency could be clarified.

Having determined that the plan did not examine Mrs. Cooke or the record in a manner that justified its rejection of disability due to fibromyalgia, I must next determine if the plan had any alternative basis to question Mrs. Cooke's or her physician's credibility in order to justify rejection of that condition as disabling.

One method of challenging Mrs. Cooke's credibility would be to observe that she was actually more active than she had reported. Apparently, in an attempt to do just this, the plan hired a private investigator to observe Mrs. Cooke's behavior. The private investigator reported that between February 18 and February 20, 2004 (which constituted the entirety of the investigatory period), the subject did not leave her home and the investigator noted no activity inconsistent with Mrs. Cooke's stated limitations. A.R. H00359-61. The report does nothing to undermine Mrs. Cooke's credibility.

The plan also argues that Dr. Friedman's conversation with Dr. Florentino undermined Mrs. Cooke's credibility. As discussed, *supra*, the report of that conversation is of questionable reliability and is therefore not a proper basis for discrediting Mrs. Cooke. The record does include evidence that

may show that other conditions Mrs. Cooke suffers from are not disabling. That does not mean that she is not disabled due to fibromyalgia and does not absolve the plan from evaluating that claim. The record shows that the plan did not give meaningful consideration to the evidence submitted supporting a disability of fibromyalgia and made no attempt to gauge the severity of that condition any meaningful way. Therefore, I find that the plan's denial of benefits was arbitrary and capricious.

Additionally, the plan's determination was also arbitrary and capricious because the denial letter failed to set forth "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material is necessary." 29 C.F.R. § 2560.503-1(g)(1)(iii); *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 693 (7th Cir. 1992).

The plan's denial letter to Mrs. Cooke stated only that "[i]f you have additional medical information not mentioned above or wish to reconsider our decision, you should submit your formal request for reconsideration in writing . . . ." This language is insufficient. *Id.* ("Clearly, a blanket request for 'additional medical information' would not have satisfied the regulatory requirements.") Defendants argue that the language in the letter implying that the additional information that Mrs. Cooke needed to submit was "information to support a functional

loss impairment that would prevent Plaintiff from performing the substantial and material duties of her occupation." This general language provided no more guidance to Mrs. Cooke than the blanket request for "additional information." By the time her claim was reviewed on appeal, Mrs. Cooke's record contained a wide array of records which included clinical diagnoses of fibromyalgia and opinions corroborating her self-reported claims as to the severity of the condition. Given the nature of fibromyalgia, it is unclear to this court what further information the plan needed in order to establish a claim of disability due to fibromyalgia. The instruction in Mrs. Cooke's denial did not provide an adequate explanation to Mrs. Cooke as to how she could perfect her claim. Therefore, the denial letter did not substantially comply with the governing regulation and Mrs. Cooke was not able to secure a meaningful review of plan's denial. *Id.* at 689-90.

Remand is the appropriate remedy when a plan has failed to provide adequate procedures in its initial denial of benefits. *Hackett v. Xerox Corp.*, 315 F.3d 771, 776 (7th Cir. 2003). ("In a case where the plan administrator did not afford adequate procedures in its initial denial of benefits, the appropriate remedy respecting the status quo and correcting for the defective procedures is to provide the claimant with the procedures that

16

she sought in the first place."). Accordingly, I deny the plan's motion for summary judgment and order this case remanded for further proceedings consistent with this opinion.

**ENTER ORDER:**

*Elaine E. Bucklo*
**Elaine E. Bucklo**
United States District Judge

Dated: March 8, 2006